IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NATASHA WHITE, | ) CASE NO. 1:24-CV-00135-CAB |
| Plaintiff, | ) |
| | ) JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) UNITED STATES DISTRICT JUDGE |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) MAGISTRATE JUDGE |
| | ) JONATHAN D. GREENBERG |
| Defendant. | ) |
| | ) **REPORT AND RECOMMENDATION** |

Plaintiff, Natasha White ("Plaintiff" or "White"), challenges the final decision of Defendant, Martin O'Malley,[1] Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

I.  PROCEDURAL HISTORY

In August 2021, White filed an application for POD, DIB, and SSI, alleging a disability onset date of January 1, 2013 and claiming she was disabled due to vertigo, arthritis, fibromyalgia, back condition, and leg condition. (Transcript ("Tr.") 223-32, 244.) White subsequently amended her alleged onset date to

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security.

July 23, 2019. (Tr. 279; 39.) The applications were denied initially and upon reconsideration, and White requested a hearing before an administrative law judge ("ALJ"). (Tr. 126-45; 148-63.)

On December 5, 2022, an ALJ held a hearing, during which White, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 35-59.) On January 18, 2023, the ALJ issued a written decision finding White was not disabled. (Tr. 14-30.) The ALJ's decision became final on December 7, 2023, when the Appeals Council declined further review. (Tr. 1-3.)

On January 24, 2024, White filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 7, 9, 10.) White asserts the following assignment of error:

(1) The ALJ's mental RFC finding is unsupported by substantial evidence he failed to properly evaluate the opinion of consultative examiner Dr. Gruenfeld.

(Doc. No. 7.)

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

White was born in 1971 and was 51 years-old at the time of her administrative hearing (Tr. 80), making her a "person closely approaching advanced age" under Social Security regulations. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e). She has a high school equivalent education. (Tr. 245.) She has past relevant work as a janitor. (*Id.*)

### B.   Relevant Medical Evidence[2]

In June 2019, a physical examination during a hospital visit for armpit pain, showed White appeared alert, well, and in no acute distress. (Tr. 357.) White's symptoms were negative for depression, anxiety, or suicidal ideation. (Tr. 362.)

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

On October 18, 2020, White was evaluated at an emergency department due to complaints of abscess and abdominal pain. (Tr. 698.) White's symptoms were negative for both anxiety and depression. (Tr. 700.)

On November 20, 2021, White presented for a physical examination. (Tr. 860-70.) She was alert but did not maintain good eye contact. (Tr. 863.) She seemed indifferent, had clear thought process, fluent speech, normal memory, and good concentration. (*Id*.)

On January 2, 2022, White presented to Kenneth Gruenfeld, Psy.D., for a psychological examination related to her claim for mental disability benefits. (Tr. 896.) White reported working at Home Depot for 6 years until 2013. (Tr. 897.) She stated that she got depressed and couldn't get transportation. (*Id*.) She hid in a closet at work due to anxiety. (*Id*.) White noted that she never had problems with co-workers and did not indicate anger or aggression as symptoms of her depression. (Tr. 900.)

White reported problems with depression, sadness, and low self-esteem. (Tr. 897.) She has problems sleeping and her mind is always racing. (*Id*.) She reported lacking focus, being easily distracted, and forgetting conversations with others. (*Id*.) White stated she lacks motivation, isolates from others, and no longer finds joy in things she once enjoyed. (Tr. 898.) White never participated in psychotherapy and never used psychiatric medication. (*Id*.)

White stated she knows how to perform basic chores like cooking, washing dishes, washing clothes, and vacuuming but she is inconsistent in performing chores due to her mental health issues. (Tr. 898.) She showers several times per week and rarely socializes with others. (*Id*.)

White was well-groomed, alert, and maintained appropriate hygiene. (*Id*.) She sat still in her chair, maintained appropriate eye contact, and did not exhibit any hostile or aggressive behavior. (*Id*.) She had normal speech rate and tone. (*Id*.) White answered all questions, remained on topic, and didn't need questions repeated. (*Id*.) Her affect and mood were appropriate. (*Id*.) She did not appear nervous and

denied experiencing anxiety at the time. (*Id*.) White did not demonstrate or endorse symptoms of psychotic condition. (*Id*.) White was oriented, exhibited good concentration, and remained on topic. (Tr. 899.) She could recall three of three simple objects after 15 minutes, completed serial seven subtraction down to 86. She could recall four digits forward and three digits backward. (*Id*.) White was respectful and polite during the examination. (Tr. 900.) Dr. Gruenfeld diagnosed White with major depressive disorder, single episode, moderate. (*Id*.) Dr. Gruenfeld opined White would have difficulty completing multi-step tasks and carrying out tasks due to issues of focus and motivation. (*Id*.) Dr. Gruenfeld stated stress would trigger White's mental health issues, and the quality and consistency of her task performance would decrease as her stress increased. (*Id*.)

On June 24, 2022, White presented to the emergency department due to pain on her right side. (Tr. 93.) During physical examination, White was alert and oriented. (Tr. 987.) She was not nervous, anxious, or confused. (*Id*.) She had normal speech and behavior. (Tr. 988.) White denied any hallucinations or suicidal thoughts. (Tr. 987.)

C.     **State Agency Reports**

   1.     **Mental Impairments**

On March 17, 2022, psychologist Vicki Warren, Ph.D., reviewed the claim file and opined that White had moderate limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing herself. (Tr. 83.) Dr. Warren adopted the mental limitations in White's July 2019 RFC, which limited White to simple, routine tasks and one-step instructions; goal-based production work measured by end result; occasional decision making and occasional changes in work setting; no interaction with the public, but occasional and superficial interaction with co-workers and supervisors. (Tr. 96; 68.)

On May 17, 2022, on reconsideration, Audrey Todd, Ph.D., affirmed Dr. Warren's findings. (Tr. 103.)

**D.     Hearing Testimony**

During the December 5, 2022 hearing, White testified to the following:

• She has back, leg, and shoulder problems. (Tr. 47.) She has uncontrollable body spasms. (*Id*.) When she bends sometimes her "legs are going out and [her] knees are bothering [her]." (*Id*.) She experiences back pain every day. (*Id*.) She is not receiving treatment for her back "because there is nothing they can do about it." (*Id*.) Her knees swell up. (*Id*.) She has pain in the back of her knees and when she was walking her "knees just went out". (*Id*.)

• She estimates that she can lift and carry ten pounds, "if that." (Tr. 48.) She has only been able to lift ten pounds for a few years. (*Id*.) She has difficultly standing for long periods of time because "[her] legs hurt and [her] back goes out." (*Id*.) She can only stand for "minutes" before she would have to sit down. (*Id*.) She has difficulty sitting because her back hurts. (*Id*.) She does not know how long she can sit before she needs to stand up. (*Id*.) She has difficulty reaching forward and reaching over her head. (*Id*.)

• She experiences pain in her right ankle every day. (Tr. 48-49.) She takes a pain medication and it works sometimes. (Tr. 49.) One side effect of the medication is sleepiness. (*Id*.)

• She has difficulty performing daily activities like personal hygiene and chores around the house due to her impairments. (*Id*.) She has difficulty "getting around." (*Id*.) She does not know how tall she is. (*Id*.) She weighs 300 pounds. (*Id*.) She lives with her son who takes care of the laundry, cooking, and vacuuming. (Tr. 51.) She puts food in the oven "every now and then" but her son cooks. (*Id*.) She uses the cart to get around at the grocery store. (*Id*.) She does not drive. (*Id*.) She has a cane that she uses when she goes out of the house. (Tr. 51-52.) She does not need the cane inside the house because it is a small house. (Tr. 52.)

• In terms of mental impairments, she testified she doesn't "get along with people." (Tr. 50.) She "can lose her memory sometimes and [she'd] be forgetting things." (*Id*.) She is not seeking any mental health treatment and she is not taking any medications for mental health. (*Id*.) She uses a calendar to remember her doctor appointments. (Tr. 51.) When asked how she remembers to take her medication, she said, "I just take them." (*Id*.) When asked if she felt comfortable around others at the grocery store, she said nobody bothers her and she doesn't bother them. (Tr. 52.)

The ALJ told the VE "[w]e are looking [. . .] at a younger individual" with no past work and a GED. (Tr. 57.) The ALJ then posed the following hypothetical question:

>The first hypothetical question will take into account a light exertional level with consideration of the prior ALJ decision. We're going to look at no climbing of ladders, ropes or scaffolds with occasional climbing of ramps and stairs, slightly more restrictive with posturals, occasional balance, stooping, crouching, kneeling and no crawling, with knee involvement.
>
>No work at unprotected heights, no work around hazardous machinery, no requirement for commercial driving with the plantar fasciitis -- it was plantar -- excuse me, I want to make sure I'm using the right -- plantar nerve lesions in the foot, a history of only occasional bilateral operation of foot control.
>
>We'll look at only occasional bilateral overhead reaching protectively. There were some complaints of shortness of breath and emergency room, so I think we're just going to be a little more protective here and avoid concentrated exposure to cold, heat, humidity, wetness, oh, pulmonary irritants and with the fibromyalgia complaints, avoid concentrated exposure to vibration as well.
>
>In terms of assessment of B criteria, we'll look at B criteria at moderate for all four, translating that to simple/routine work. We'll look at the social interaction and no tandem work. She can work in proximity of co-workers, but no interaction in proximity with general public.
>
>We'll look at, oh, only occasional interaction with co-workers and supervisors with moderate persistence and pace, simple/routine work again, work of a variable rate, so no fast-paced production assembly line work or work with a machinist setting the pace, end-of-day work goals or strict hourly production.
>
>We'll also look at only occasional decision-making, only occasional changes in the work setting. With consideration of hypothetical number one, can -- and I am kind of eliminating here the -- oh, little more vague terms of occasional to superficial level. I'd rather use more of the restrictions here that were presented, as well as low stress and we're looking at more simple/routine with the pace restrictions that we laid out.
>
>With hypothetical number one, would such an individual, in your vocational experience, education and training be capable of performing other work?

(Tr. 53-54.)

The VE testified the hypothetical individual would be able to perform representative jobs in the economy, such as a housekeeping cleaner, merchandise marker, and mail clerk. (Tr. 54-55.) The ALJ responded, "[h]ypothetical number two, if we were to take hypothetical number one with the allowance for use of a cane for walking from the workstation, contralateral arm can be used to lifting and carrying

amounts would there be other work that such an individual could perform?" (Tr. 55.) The VE asked to clarify whether the ALJ was looking for light jobs or sedentary jobs. (Tr. 55.) The ALJ clarified that she would like to hear if there would be potential for other work prior to the individual turning age 50. (Tr. 56.) The VE testified that the individual could perform sedentary work as an addresser, touchup screener, and "final bench assembler, optical". (Tr. 56.) The ALJ asked:

> With hypothetical number three, let's go back to hypothetical number one, which was at light. That hypothetical question asked you to consider only occasional overhead reaching. we additionally added reaching in all other directions at frequent, would that have any change of response as to whether there would be other work that such an individual could perform?

(Tr. 56.) The VE testified that there would be no change and no reduction in job numbers. (*Id.*) The ALJ asked, "For hypothetical number four, can you please identify in your experience, education and training, please, during an eight-hour work shift the routine rest breaks?" (*Id.*) The VE testified two 15-minute breaks and 30-minutes to 1-hour for lunch. (Tr. 56-57.) The ALJ asked:

> If I were to consider a marked level of concentration/persistence/pace and the individual either needed 2 additional 15-minute breaks or, let's say, smaller breaks throughout the day but those were occurring at 20 percent off-task time and that was happening regularly, 3 out of 5 days a week and those weeks were consistent -- I'm just trying to set that there was more of a pattern for this than a 1-time occurrence.
>
> Would such an individual be capable of sustaining competitive employment in your experience, education and training?

(Tr. 57.) The VE responded, "no" and explained that more than ten percent would be work-preclusive. The ALJ asked,

> For hypothetical number five, can you identify, please, minimal tolerances for absences? And so in this hypothetical we are assuming that the individual did not need those required breaks or time off beyond ten percent, but instead it's an unexcused absence in the personnel system. What are minimal tolerances there, please?

(*Id*.) The VE testified that one day per month would be tolerated, and two days per month would be work-preclusive. (*Id*.)

### III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c), 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or

combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, White was insured on the alleged disability onset date, July 23, 2019, and remains insured through September 30, 2019, the date last insured ("DLI"). (Tr. 81.) Therefore, in order to be entitled to POD and DIB, White must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The Claimant meets the insured status requirements of the Social Security Act through September 30, 2019.

2. The Claimant has not engaged in substantial gainful activity since July 23, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The Claimant has the following severe impairments: osteoarthritis; fibromyalgia; thoracic and lumbar spine degenerative disc disease; obesity; depression; and anxiety (20CFR 404.1520(c) and 416.920(c)).

4. The Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs; occasional balancing, stooping, crouching, and kneeling; no crawling; bilateral operation of foot controls; occasional bilateral overhead reaching; no work at unprotected heights or around hazardous machinery; no commercial driving; no concentrated exposure to extreme cold, heat, humidity, wetness, or pulmonary irritants, and no concentrated exposure to vibration. The claimant is further limited to simple routine work with no strict production or fast-paced production requirements; occasional decision-making; occasional changes in the work setting; no work with or in proximity of the general public as part of routine job duties; occasional interaction with co-workers and supervisors and no tandem work able to work in proximity to co-workers.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 23, 1971, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 23, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-29.)

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is

supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a

decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### VI. ANALYSIS

#### A. Opinion Evidence.

In her sole assignment of error, White argues the ALJ "failed to properly evaluate the opinion of consultative examiner Dr. Gruenfeld." (Doc. No. 7 at 7.) White asserts the ALJ "failed to properly discuss the supportability and consistency factors." (*Id*. at 9.) White states the ALJ found Dr. Gruenfeld's opinion "persuasive only 'to the extent it supports the moderate limitations in all four categories of mental functioning.'" (*Id*.) White argues that this is circular logic, which does not properly address the consistency factor. (*Id*., citing *Dragon v. Comm'r Soc. Sec*., 470 F. App'x 454, 466 (6th Cir. 2012).) White states the ALJ "evaluated the credibility of a medical opinion based on its consistency with his own preconceived conclusions, rather than with the medical record as a whole." (*Id*. at 10.) White argues the ALJ supportability analysis was "speculative" because the ALJ concluded Dr. Gruenfeld's opinion was "based on [White's] subjective reports rather than objective findings." (*Id*.) White asserts that Dr.

Gruenfeld's opinion did not mirror White's subjective complaints and the ALJ "offered no supported [*sic*] for the speculative inference that the opinion was largely based on subjective complaints." (*Id*. at 11.)

The Commissioner responds that "[s]ubstantial evidence supports the ALJ's evaluation of consulting psychologist Dr. Gruenfeld's opinion." (Doc. No. 9 at 5.) The Commissioner argues the "ALJ correctly observed that the [*sic*] Dr. Gruenfeld's opinion failed to provide vocationally relevant terms." (*Id*. at 5.) The Commissioner asserts that the failure to provide vocationally relevant terms permits the ALJ to discount an opinion where the limitations are not specific enough for the ALJ to determine how they would translate into work-related restrictions. (*Id*. at 5-6, citing *Andres v. Comm'r of Soc. Sec.,* No. 3:16 CV 991, 2017 WL 3447849, at *14 (N.D. Ohio July 11, 2017), *report and recommendation adopted*, No. 3:16 CV 991, 2017 WL 3438550 (N.D. Ohio Aug. 10, 2017), aff'd, 733 F. App'x 241 (6th Cir. 2018); *Jordan v. Comm'r of Soc. Sec*., No. 1:19-cv-2392, 2020 WL 5530021, at *15 (N.D. Ohio, Sept. 15, 2022). The Commissioner points out that while the ALJ could have discounted Dr. Gruenfield's opinion, instead the ALJ was deferential to it. (*Id*. at 6.) The Commissioner explains the ALJ found Dr. Gruenfeld's opinion persuasive even though White's examination was unremarkable and his opinion appeared based on White's subjective complaints. (*Id*.) The Commissioner notes the ALJ converted Dr. Gruenfeld's "vaguely worded opinion into vocationally relevant terms", which is proper in this District. (*Id*., citing *Stoodt v. Comm'r of Soc. Sec*., No. 3:20-cv-02370, 2022 WL 721455, at *16 (N.D. Ohio Jan. 13, 2022); *Cox v. Comm'r of Soc. Sec*., No. 1:21-cv-01250, 2022 WL 6255603, at *14 (N.D. Ohio July 29, 2022).)

The Commissioner states White did not meet her evidentiary burden because she failed to assert what additional limitations were warranted in her RFC. (*Id*. at 7.) Instead, the Commissioner asserts, White argues the "RFC did not capture the full scope of Plaintiff's mental limitations due to the ALJ's failure to properly evaluate" Dr. Gruenfeld's opinion. (*Id*., citing Pl. Br. at 8.) The Commissioner contends the ALJ set forth significant limitations despite White's own admission that she sought no mental health

treatment, and the ALJ may properly consider a lack of mental health treatment in setting forth an RFC determination. (*Id*. at 7.)

In her Reply Brief, White restated her argument concerning the ALJ's alleged use of circular reasoning. (Doc. No. 10 at 1.) White also asserted the Commissioner failed to respond to issues raised in Plaintiff's Brief, including improper consistency analysis, and the ALJ's assertion that Dr. Gruenfeld relied only on subjective complaints. (*Id*. at 2.)

Since White's claim was filed after March 17, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability;[3] (2) consistency;[4] (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other

---

[3] The Revised Regulations explain the "supportability" factor as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[4] The Revised Regulations explain the "consistency" factor as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
>
> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.
>
> (3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.,* No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) (quoting 20 C.F.R. § 416.920c(a), (b)(1)). A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

> The ALJ analyzed Dr. Gruenfeld's opinion as follows:
>
>> Finally, the undersigned considered the psychological consultative examiner's report at Exhibit B6F. He indicated that the claimant reported problems with focus and motivation that impacted her past job performance and would have similar problems in the future and will struggle to consistently carry out future job tasks, will work slower than others and have problems completing multi-step job tasks. He further noted that the claimant should be able to effectively work with others, but stress will trigger her mental health issues, and the quality and consistency of future task performance will worsen as stress heightens. The examiner did not provide specific work-related limitations in vocationally relevant terms. He appears to base his opinion largely on the claimant's subjective reports rather than objective clinical findings. Nonetheless, to the extent that his opinion can be considered to indicate moderate limitation in the relevant areas of mental functioning, it is consistent with the record. Accordingly, the examiner's opinion is persuasive to the extent it supports the moderate limitations adopted herein.

(Tr. 27.)

Supportability and consistency are the most important factors under the new regulations for evaluating medical source opinions. 20 C.F.R. § 404.1520c(a). The ALJ considered the supportability and consistency of Dr. Gruenfeld's opinions, discussing Dr. Gruenfeld's acceptance of White's subjective reports and whether his opinion is consistent with the record. (*Id.*) The ALJ noted that Dr. Gruenfeld did not use vocationally relevant terms, thus the ALJ interpreted his findings to indicate "moderate limitation

in the relevant areas of mental functioning" which the ALJ found consistent with the record. (*Id*.) While not expressly using the term "supportability" the ALJ stated Dr. Gruenfeld's opinion appeared to be based "largely on the claimant's subjective reports rather than objective clinical findings." (*Id*.) This Court has held "an ALJ need not specifically use the terms 'supportability' or 'consistency' in his analysis." *Adams v. Comm'r of Soc. Sec.*, No. 1:21-CV-02199-PAB, 2023 WL 2373541, at *6 (N.D. Ohio Jan. 23, 2023), report and recommendation adopted sub nom. *Adams v. Kijakazi*, No. 1:21CV2199, 2023 WL 2347368 (N.D. Ohio Mar. 3, 2023). Moreover, the ALJ recognized the lack of mental health treatment records, stating:

> While the claimant reports symptoms of depression and anxiety, she does not receive mental health treatment. Treatment records routinely document review of symptoms that are negative for depression, anxiety, or suicidal ideation (Exhibits B1F/75; B2F/137.) The claimant's mental status examinations are routinely unremarkable. There is no indication that the claimant required emergency treatment for acute mental health symptoms exacerbation or hospitalization for periods of mental instability.
>
> \*\*\*
>
> The claimant appears to have managed her mental health symptoms without any type of treatment.
>
> \*\*\*
>
> The mental limitations are an adoption of the prior ALJ mental limitations absent new and material evidence. However, the undersigned has further clarified the limitations in vocationally relevant terms.

(Tr. 26-27.) "An ALJ may reasonably consider a claimant's lack of mental health treatment . . ." *Graham v. Comm'r of Soc. Sec.*, Case No. 23-00574, 2024 WL 580969, at *10 (N.D. Ohio Feb. 13, 2024. Here, the ALJ assessed both the supportability and consistency of Dr. Gruenfeld's opinion, considering the lack of mental health treatment records and prior ALJ mental limitation findings.

It is the ALJ's job to weigh the evidence and resolve conflicts, and she did so here. While White would weigh the evidence differently, it is not for the Court to do so on appeal.

There is no error.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: November 26, 2024

    *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).